IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROBERT CVAROVSKY, | CASE NO. 1:09 CV 2797 |
| Plaintiffs, | |
| v. | JUDGE DONALD C. NUGENT |
| THE VILLAGE OF NEWBURGH HEIGHTS, *et al.*, | **MEMORANDUM OPINION** |
| Defendants. | |

This matter is before the Court on the Defendants' Motion for Summary Judgment Re: Federal Claims, and Defendants' Motion for Summary Judgment Re: State Law Claims. (ECF #14, 16).  Plaintiff has filed a combined Brief in Opposition to Defendants' Motions, and the Defendants filed a Combined Reply Memorandum in Support of its Motions.  (ECF # 18, 19). Briefing is now complete.  After full review of the record and the relevant law this Court finds that Defendants' are entitled to summary judgment on Plaintiff's claims.

**PROCEDURAL AND FACTUAL HISTORY**[1]

Plaintiff, Robert Cvarovsky filed this action against Defendants, Village of Newburgh Heights ("the Village"), and its current and former Councilpersons, Michelle Graora, Debora Padilla, Dorene Kray, Lis Kroepel, and Steve Moran.   Plaintiff seeks declaratory judgment and monetary damages related to his termination from the position of Chief of Police for the Village of

---

[1] In accordance with the summary judgment standards, where the facts are in dispute the Court will consider the Plaintiff's version to be true for purposes of this Motion only.

Newburgh Heights.   Mr. Cvarovsky was a part time Chief of Police for the Village for approximately three years before he was terminated by motion of the Village Council.  He was appointed to the position by Mayor Kinder.  Mr. Cvarovsky claims that he was removed from his position without due process of law in violation of his substantive and procedural due process rights under the United States Constitution.  Mr. Cvarovsky also claims that the motivation for his dismissal was retaliation for his political allegiances in violation of his First Amendment rights under the United States Constitution.  The Defendants claim that Mr. Cvarovsky was terminated, along with many other Village employees, due to economic reasons.  Further, Defendants claim that they had no knowledge of Mr. Cvarovsky's political affiliations, and, therefore, they could not have discharged him on this basis.

The Village is a municipal corporation and statutory non-charter village located in Cuyahoga County, Ohio.  The Village operates under the general statutory plan, wherein legislative power is vested in a village council.  *See* O.R.C. 731.09.  There is no dispute that at the time of Mr. Cvarovsky's termination, the Village was having serious financial problems, and many departments were facing cuts, including some employment terminations.  There also appears to be no dispute that the Police Captain, Mr. Jakowski was facing termination, but was covered by a collective bargaining agreement that permitted him to be bumped back to a patrol officer ranking.  When Mr. Cvarovsky was terminated, Mr. Jakowski, was demoted to patrol officer and assigned the duties of Acting Police Chief.[2]  This was a full time position.  Two other full-time police officers were laid off at that time.

---

[2] As Acting Chief, Mr. Jakowski was receiving only the salary of a full-time patrol officer.  (Kinder Depo. at 12-13).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson,* 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most

civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury.*"* *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore,

-4-

hearsay evidence cannot be considered on a motion for summary judgment.
*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## **DISCUSSION**

### I. **First Amendment Retaliation - Count II**

In Count II, Plaintiff contends that his termination constitutes a violation of his First Amendment rights, in that such actions were taken, in part, in retaliation for Plaintiff exercising his First Amendment rights.  Plaintiff claims that the First Amendment protects his right to provide political support to, and to politically affiliate with the Mayor, Derrick Kinder.  Courts have "recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment- speech assembly, petition for the redress of grievances, and the exercise of religion."  *Akers v. McGinnis*, 352 F.3d 1030, 1035-36 (6th Cir. 2003).  State employees' freedom of expressive association claims are analyzed under the same standard as a freedom of speech claim.  *See Id.* at 1036.

In order to establish a prima facie case of a First Amendment retaliation claim, a public employee must demonstrate evidence sufficient to establish three elements: (1) the plaintiff engaged in constitutionally protected speech or other activity; (2) the plaintiff was subjected to adverse action or was deprived of some benefit; and, (3) the protected speech was a "substantial or a "motivating factor" in the adverse action.  *Mt Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97S.Ct. 568 (1977). If the plaintiff makes this showing, the burden then shifts to the defendant to show by a preponderance of the evidence "that it would have taken the same action even in the absence of the protected conduct." *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir.1999) (quotation omitted); *see also Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568.   Whether a plaintiff has engaged in protected activity is a question of law for the court. *Connick v. Myers*, 461 U.S. 138, 148 n. 7, 150 n. 10, 103 S.Ct.1684 (1983).  Plaintiff bears the burden of proving that

his actions were constitutionally protected in this context. *Jackson,* 168 F.3d at 909.

Plaintiff has offered insufficient evidence to show that he engaged in any constitutionally protected speech or activity, or that such speech or activity was a motivating factor in his termination. Mr. Cvarovsky claims the following facts establish his protected conduct: (1) he was appointed to his position by the Mayor; and, (2) he continued to support the Mayor. No additional allegation of speech or expressive activity is provided. Plaintiff cites no specific communication, no specific expression of opinion, and no specific activity or action that expressed his alleged support for the Mayor.

Being appointed to an employment position by the Mayor does not constitute political activity or speech. There is no evidence that Plaintiff was hired for his political beliefs or outlooks; no evidence that he campaigned, voted, or otherwise participated in any political activities in the Village; and no evidence that he ever expressed or otherwise made his political views known to the Council members who terminated him.[3] There is also no evidence that any of the Council members knew that Mr. Cvarovsky supported the Mayor or his viewpoints, that he voted for the Mayor, or otherwise was in any way involved in the politics espoused by the Mayor. Although the Council members may have known that the Mayor appointed Mr. Cvarovsky to his position, this, in and of itself, is not evidence that they had any knowledge of Mr. Cvarovsky's political views or affiliations.

Mr. Cvarovsky claims that he was fired for his political affiliations and speech, but

---

[3] Plaintiff was not a resident of, and did not vote in the Village. (Cvarovsky Depo. at 5, 6). In 2007 Plaintiff refused to endorse the Mayor as a candidate in 2007, and could not identify any time when he publically supported the Mayor. (Cvarovsky Depo. at 66, 77-78).

provides no evidence whatsoever that this was the basis for his termination.  The evidence he cites in support of this contention includes his own sworn affidavit, which falls short of attesting that he was fired for his political affiliations or speech, and which contradicts earlier deposition testimony;[4] the memo setting forth the recommendation for his termination, which specifically cites economic reasons for his termination; the deposition of Mayor Kinder, in which he admits that he does not know why Mr. Cvarovsky was terminated[5] and attests that some Council members were unhappy with Mr. Cvarovsky's performance,[6] but does not attribute Mr. Cvarovsky's termination to retaliation for political affiliations or speech;[7] and, the deposition of Councilperson, Robert Schippling, in which he states  that at the time he didn't believe that Mr. Cvarovsky's termination made economic sense, and that "some council people has an issues with some of [Mr.

---

[4] Paragraph 8 of Mr. Cvarovsky's affidavit states that "the Defendants have made efforts to remove Mayor Derrick Kinder's political appointees," but it does not identify any other Kinder appointees that were terminated or otherwise retaliated against.  Mayor Kinder testified that in addition to Mr. Cvarovsky, another of his appointees, Mr. Moroney was also terminated.  He did not indicated how many of his appointees actually maintained their positions, however.  Further, although Mayor Kinder personally believed that these two were terminated because they were his appointees, he offered no evidence or proof to support this opinion. (Kinder Depo. at 48-49).

[5] Kinder Depo. at 27.

[6] Kinder Depo. at 27-28.

[7] In fact, whenever Mayor Kinder expressed an opinion about Mr. Cvarovsky's termination, he referenced personal issues, not political speech. . (Kinder Depo. at 44-45).  Further, even Mr. Cvarovsky's attorney interchanged the terms personal and political, and expressly noted that when he used the term "political" it did not refer to political affiliation ("R's and D's"), but rather to personal differences between the parties.  At best this would seem to involve what might be offhandedly referred to as office politics, but there is no evidence that politically protected speech or activity was in any way involved in Mr. Cvarovsky's termination.

Cvarovsky's] performance."[8] (Schippling Depo. At 11-12).

Failing to identify particular statements or activity, or even the subject matter of the statements or activity that Plaintiff contends constitute protected political expression, precludes him from recovery because he has not satisfied his burden on summary judgment to provide the Court with facts that could support a finding that the statements addressed matters of public concern as defined under *Connick*. A district court is not required to search the record to determine whether genuine issues of material fact exist where a non-moving party has failed adequately to respond to a summary judgment motion. *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

Further, even if Mr. Cvarovsky's appointment or alleged affiliation with the Mayor were sufficient to constitute political activity for First Amendment purposes, not all activities that may receive some level of First Amendment protection in other contexts will satisfy the requirements for protected speech or activity in a public employee's retaliation claim. For example, the *Connick* Court held that

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in retaliation to the employee's behavior. Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.

---

[8] Even if this would be sufficient to create a question of fact as to whether economic reasons were the reason for Mr. Cvarovsky's termination, it provides no evidence that the real reasons for the termination were political, or otherwise based on speech or activity protected by the First Amendment.

Id.

There is a two part analysis to determine if a public employee has engaged in protected speech. First, the Court must determine whether the speech involves a matter of public concern. *Connick,* 461 U.S. at 146. In addition, the public employee must show that his interest in the particular expression outweighs the government's interest, "as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

To determine whether a public employee's speech addresses a matter of public concern, a court must examine the content, form and context of a given statement or activity. *Connick*, 461 U.S. at 147- 48. "[T]he key question is not whether a person is speaking in his role as an employee or a citizen, but whether the employee's speech in fact touches on a matter of public concern." *Banks v. Wolfe Cty. Bd. Of Education*, 330 F.3d 888, *14 (6th Cir. 2003); *see also Cockrel v. Shelby Cty. School District*, 270 F. 3d 1036, 1052 (6th Cir. 2001).

The "political" associations that Mr. Cvarovsky asserts as the basis for his termination does not rise to the level of protected speech in the context of a public employee retaliation claim because it is not an activity addressing a public concern. Mr. Cvarovsky's termination, even though he was appointment by the Mayor, affects only his personal employment. The Village was not left without police coverage, and there are no allegations that Mr. Cvarovsky's termination negatively impacted or affected the public. Although it is clear that Mr. Cvarovsky's personal interest in maintaining his employment was affected, there is no evidence that the public interest was affected by dismissal of a Mayoral appointee. In a public employment case, when the speech or activity which is the cause of an alleged retaliatory suspension or termination does

not touch on a public concern, our inquiry must end, and summary judgment is warranted in favor of the Defendants.

## II. Due Process Claim - Count VI

Plaintiff alleges that his "property interest in his continued employment give rise to a substantive right under the due process clause under the . . .[9] Fourteenth Amendment." (Complaint ¶ 35). The substantive component of the Due Process Clause protects "fundamental rights" that are so "implicit in the concept of ordered liberty" that "neither liberty or justice would exist if they were sacrificed." *Palko v. Conn.*, 302 U.S. 319, 325, 58 S.Ct. 149 (1937). Substantive due process rights have been specifically defined by the United States Supreme Court, and do not include the right to maintain employment, public or otherwise. *See Seal v. Morgan*, 229 F.3d 567, 574-575 (6th Cir. 2000). Plaintiff does not refute the conclusion that public employment is not a fundamental right entitled to protection under the substantive component of the due process clause.

Plaintiff has also asserted a procedural due process claim based upon his alleged property interest in maintaining his job. In considering procedural due process claims, courts must first determine whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property. Only after the court has determined that the interest claimed is within the protection would the court consider the form and nature of the process that is due. *Board of Regents v. Roth*, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06 (1972); *Ferencz v. Hairston*, 119 F.3d 1244, 1246 (6th Cir. 1997). Accordingly, Mr. Cvarovsky must first show a protected property interest, and

---

[9] The Complaint also mistakenly references the Fourth Amendment at this juncture. The Fourth Amendment prohibits unreasonable searches and seizures and has no bearing on a wrongful termination case.

-11-

then after meeting that initial threshold, must demonstrate that this interest was abridged without appropriate process.[10]

Defendants do not directly challenge Mr. Cvarovsky's assertion that he has a property interest in the position of Chief of Police, as the position was created by Ohio Rev. Code Ann. §737.15, and was not terminable at-will.[11] Assuming, therefore, for purposes of this opinion, that the Village has deprived Mr. Cvarovsky's of his right to maintain his employment,[12] the question turns to whether or not he was afforded constitutionally sufficient due process in connection with the deprivation.

Plaintiff argues that because he was denied the process set forth in O.R.C. §737.171, and as required by O.R.C. §737.15, he was not afforded due process of law as required by the United States Constitution. It is undisputed that the provisions of O.R.C. § 737.171 were not followed in connection with Mr. Cvarovsky's termination. Defendants, on the other hand, argue that Mr. Cvarovsky has no federally protectable due process interest in the procedures established by

---

[10] Although Mr. Cvarovsky alleges damage to his reputation and good name stemming from his termination, he has not alleged a violation of this liberty interest. Even if he had alleged a deprivation of due process based on this liberty interest, he would not be able to establish the elements necessary to establish a constitutional violation, as his termination was publically attributed to economic difficulties in the Village and no stigmatizing statements were publically made about Mr. Cvarovsky in the process.

[11] Defendants claim that Mr. Cvarosvsky has not property interest in the procedures established by O.R.C. § 737.171, but has not challeged his alleged property interest in the job created by O.R.C. §737.15. Because the parties have provided no evidence or law to the contrary, the Court assumes the existence of a property right in the position of Chief of Police, for purposes of this opinion.

[12] The right to maintain his employment is limited by certain conditions specified in the statute creating the position. The fulfillment or lack of fulfillment of these conditions remains a question of fact that would be determined at trial.

O.R.C. § 737.171.  "The creation of procedural rights does not *ipso facto* create any property interest."  *Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996).  Although the failure to follow the correct procedures may create a cause of action under Ohio law, federal law does not require that all state established procedures be implemented in order to satisfy the due process requirements of the United States Constitution.  The question, therefore, is not whether or not the Ohio statute was followed, but whether the minimum federal requirements for due process were provided and/or available in connection with Mr. Cvarovsky's termination.

Defendants next argue that "[w]hen an employee's position is abolished for economic reasons (as opposed to a removal 'for cause'), no due process is required."  This argument fails at the summary judgment stage of litigation, however, as there is a question of fact as to whether Mr. Cvarovsky was terminated for economic reasons.  Both sides have argued that issues other than the undisputed economic troubles facing the Village may have played a role in Mr. Cvarovsky's termination.

The Sixth Circuit has stated that the amount of process due "depends upon whether the deprivation of property occurs pursuant to an 'established state procedure' or results from a 'random, unauthorized act of a state employee.'  If the former, then 'it is both practicable and feasible for the state to provide pre-deprivation process,' and the state must do so regardless of the adequacy of any post-deprivation remedy.  If the latter, then 'pre-deprivation procedures are simply impracticable' and an adequate post-deprivation remedy affords all the process that is due."  *Walsh v. Cuyahoga County*, 424 F.3d 510, 513 (6th Cir. 2005)(internal citations omitted).

Neither party contests that the state (or in this case, the Village) has an adequate established pre-deprivation process that applies to this situation, as found in O.R.C. §737.171.

Therefore, the alleged deprivation of property without due process in this action did not occur pursuant to an "established state procedure," but rather from the allegedly unauthorized acts of the Village Councilpersons.  In order to prevail on a procedural due process claim based on a random and unauthorized act, a plaintiff must also show that "available state remedies would not adequately compensate for the loss."  *Macene v. MJW, Inc.*, 951 f.2d 700, 706 (6th Cir. 1991).  The failure to allege and prove the inadequacy of state remedies is "fatal to his due process claim." *Farhat v. Jopke*, 370 F.3d 580, 597 (6th Cir. 2004)(citing *Jefferson v. Jefferson County Pub. Sch.*, 360 F.3d 583, 588 (6th Cir. 2004).

Plaintiff did not include any allegations in his Complaint that would indicate that state law would be inadequate to address his alleged harm.  Further, Defendant has pointed to at least two methods by which Plaintiff could have adequately addressed his alleged injury under state law. First, Ohio state law allows a person who claims to have been wrongfully removed from office to file a petition for writ of mandamus seeking back pay and reinstatement.  *See, e.g., State, ex rel. Minor v. Eschen*, 74 Ohio St.3d 134 (1995).  Second, Ohio law provides relief through declaratory judgment.  *Id.*  In fact, the Plaintiff himself seeks declaratory judgment though his state law claims.  The statute itself, also provides for judicial review of decision of the legislative authority in connection with removal proceedings for the Chief of Police. O.R.C. §737.171.  Although the underlying procedures were not followed, there is no allegation that an appeal based on that precise failure to follow the statute would not be allowed under this provision.   Plaintiff has failed to meet his burden of alleging and proving that the state lacks an adequate post-deprivation remedy for his termination.  Therefore, his federal due process claim is deficient under the applicable law, and Count VI must be dismissed.

### III. Qualified Immunity

Because the Plaintiff has not provided evidence establishing that any of his federal claims survive summary judgment, there is no reason to determine whether qualified immunity would relieve the Defendants from liability.   Where "no constitutional violations have occurred, it is not necessary [for a court] to consider defendants' arguments that they are entitled to qualified immunity because their actions did not violate "clearly established rights of which a reasonable person would have known." *Parsons v. Wilkinson*, 2008 U.S. Dist. LEXIS 23979 (S.D. Ohio 2008).

### CONCLUSION

For the reasons set forth above, Counts II and VI of the Plaintiff's Complaint are, hereby, dismissed.  The remaining Counts involve matters of state law.  Defendants requested the Court to decline supplemental jurisdiction over the remaining state law claims, and the Plaintiff expressed no opposition to this request.  Therefore, having dismissed all of the federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims, and those claims are dismissed without prejudice.    IT IS SO ORDERED.

                                               /s/ Donald C. Nugent
                                               DONALD C. NUGENT
                                               United States District Judge

DATED:  October 1, 2010